### ISABELLA SMITH, Appellant, v. THE CITY OF BROOKLYN, Respondent.

*City — liability of, to one injured by falling on an icy sidewalk.*

This action was brought to recover damages resulting from injuries sustained by the plaintiff by reason of her falling upon an icy sidewalk in the city of Brooklyn, on December fourth. Heavy snows had fallen on November twenty-eighth and twenty ninth, and had subsequently melted, and the ice had been formed therefrom. No notice to the defendant of this condition of affairs was shown.

*Held*, that a dismissal of the complaint was proper.

APPEAL from a judgment in favor of the defendant, entered upon an order dismissing the complaint.

*P. Keady* and *B. F. Tracy*, for the appellant.

*John A. Taylor*, for the respondent.

DYKMAN, J.:

The complaint in this action is, that the plaintiff slipped on an accumulation of ice and snow which had been unlawfully permitted, by the defendant, its servants and agents, to gather on the sidewalk of the street, and fell and broke her left arm, and sustained other serious injuries.

The negligence charged against the defendant is a failure to keep the walk in a safe condition.

The fall of the plaintiff was December 4, 1882. The testimony on the part of the plaintiff showed that there had been snow and rain, and that it was like a piece of glass where the plaintiff was injured. One of the witnesses stated that snow fell about a foot and a foot and a-half on the twenty-fifth and twenty-sixth of November, and then had sleeted over. The same witness also said that it had snowed between the twenty-eighth and twenty-ninth of November, and that between that " it had rained and then frozen, and on the twenty-ninth it had slightly got covered — a light snow storm;" and then she gave this testimony : " Q. Do you know whether the snow or ice had been removed from the sidewalk, or any part of it? A. Unless it had drifted away, it had not been removed in any other way. * * * Q. About what quantity of ice did you notice on these flags; how wide and how thick? A. An inch thick or more. Q. In what condition — lumpy or smooth? A. Smooth, where the rain had washed along the sidewalk and froze and made it as smooth as a piece of glass. Q. A little snow had fallen over this afterwards? A. Yes, sir."

On her cross-examination this witness testified as follows: " Q. When you say then that this ice was on the ground there, you mean that this fall of snow lay there, I suppose ? A. Yes, sir ; at the time — Q. You don't pretend to say it had changed into ice three or four days before? A. Yes; the snow in certain places where it had drifted was in piles, up with rain and sleet, and freezing, this

ice was there. Q. That was some days after it fell when it began to rain and thaw? A. Yes, sir. Q. How many days after? A. May be four or five, or a week. Q. The heaviest fall of snow occurred on the twenty-ninth? A. Yes, sir. Q. And some three or four days after when the temperature abated, it began to thaw and freeze. A. Yes, sir. Q. And as it melted that congealed and formed ice? A. Yes, sir. She also said that ice had been there three or four days before the accident. The fair deduction from all the testimony, is that the ice was one or two inches in thickness and covered with a slight fall of snow. The sidewalk was broken and disordered but the plaintiff fell on the ice and not on the broken flag. Besides that, the negligence charged was the failure to remove the ice, and the plaintiff cannot recover because the sidewalk was not in order and repair, for the reason that she sustained no injury therefrom. The snow had melted to water, which had become ice on the sidewalk, and that caused the fall and injury of the plaintiff.

The complaint was dismissed at the circuit and the plaintiff has appealed from the judgment. The only neglect of the defendant consists in its failure to remove the ice from the sidewalk after its formation, three or four days previous to the accident. There are about 500 miles of sidewalk in the city of Brooklyn, and in the cold season any portion of it may become coated with ice in a few hours or a few days, and no reasonable amount of inspection or care can prevent it.

This ice came from natural causes. The snow fell and was reduced to water by the temperature of the air, and that became ice from the same cause. There was no agency of the municipality, and there was no actual notice of the existence of the obstruction. But it had continued three or four days. Had it become so notorious that the jury could be permitted to infer notice?

The cities are not insurers of the safety of their citizens while walking or driving along their streets. They may and do become icy and dangerous, and horses and other animals may fall thereon and sustain injury, unless their owners use proper precautions to guard against such accidents. In our climate no reasonable amount of care can prevent the accumulation of ice and snow, and all that is required from municipal corporations is reasonable care and diligence. And what is reasonable must be determined in view of all

the surrounding conditions. Our seasons are fluctuating, the inspection of streets is not incessant, the officers and means provided for that purpose are limited, and after the exertion of all reasonable diligence, defects and obstructions will exist and injuries will result.

Such, in our view, is this case. We cannot convict the defendant of negligence, and if the case had gone to the jury and a verdict resulted to the plaintiff, we must have set it aside.

The judgment should be affirmed, with costs.

BARNARD, P. J., concurred.

Judgment affirmed, with costs.